UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| TINA MARTIN, individually and on behalf of all others similarly situated,<br><br>v.<br><br>SDS STAFFING, LLC | Case No. 7:19-cv-00198<br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Tina Martin brings this lawsuit to recover unpaid overtime wages and other damages from SDS Staffing, LLC (together, "SDS") under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA").

2. Martin and the other workers like her were typically scheduled for 10-hour shifts, 7 days a week.

3. Martin and those similarly situated often worked even more than that, sometimes as many as 85 hours in a single workweek, but they were not paid overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA, SDS paid these workers a single day rate for all hours worked and improperly classified them as independent contractors.

5. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers under the FLSA.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

8. Martin performed work for SDS in this District and Division.

## THE PARTIES

9. Martin worked for SDS from on or around September 21, 2018 until on or around May 10, 2019.

10. During that time, Martin worked exclusively for SDS.

11. Martin was a construction supervisor for SDS.

12. Martin was paid a day rate.

13. Martin was not paid a salary.

14. Martin was not paid on a fee basis.

15. Martin was not paid by the hour.

16. SDS classified Martin as an independent contractor.

17. Martin's written consent is attached as Exhibit A.

18. Martin represents at least one class of similarly situated co-workers in this lawsuit.

19. Martin represents a class of similarly situated workers under § 16(b) of the FLSA. *See* 29 U.S.C. § 216(b) ("FLSA class"). This FLSA class is defined as:

> **Current and former workers employed by, or working on behalf of, Defendant as independent contractors in the United States in the past three years who were paid a day rate.**

20. Collectively, the FLSA Class Members are referred to as "Putative Class Members."

21. SDS Staffing, LLC is a Texas limited liability company. It may be served by serving its registered agent for service of process: **Ms. Becky Latta, 24806 Valleylight Drive, Katy, Texas 77494**.

22. SDS Staffing, LLC employed Martin and the Putative Class Members.

### COVERAGE UNDER THE FLSA

23. At all relevant times, SDS has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all relevant times, SDS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. At all relevant times, SDS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

26. SDS treated Martin as an employee and uniformly dictated the pay practices to which Martin was subjected.

27. SDS's misclassification of Martin as an independent contractor does not alter her status as an employee for purposes of this FLSA action.

### FACTS

28. SDS provides staffing services to the oil and gas industry.

29. SDS employs construction supervisors to supervise contractors on oil and gas construction jobs.

30. Many of these individuals worked for SDS performing the same or substantially similar job duties as Martin and were misclassified by SDS as so-called independent contractors in connection with SDS's oil and gas staffing operations.

31. While exact job titles and job duties may slightly differ, Martin and the Putative Class Members were all subjected to the same or similar illegal pay practices for similar work.

32. Specifically, SDS classified the Putative Class Members as independent contractors and paid them a daily rate for all time worked, even those in excess of 40 hours in a workweek.

33. For example, Martin worked exclusively for SDS from September 2018 to March 2019.

34. Throughout her employment with SDS, Martin was classified as an independent contractor.

35. SDS typically scheduled Martin worked in 10-hour shifts, for as many as 7 days per week.

36. Martin frequently worked well in excess of 40 hours per week for SDS.

37. In fact, Martin frequently worked more than 84 hours per week for SDS.

38. The work Martin performed is an essential part of SDS's core business.

39. During Martin's employment with SDS and while she was classified as an independent contractor, SDS exercised control over all aspects of her job.

40. Martin was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in her same job position) to perform her job duties.

41. During the time that Martin worked with SDS, she worked exclusively for SDS.

42. SDS controlled all the significant or meaningful aspects of the job duties performed by Martin.

43. SDS ordered the hours and locations Martin worked, tools used, and rate of pay received.

44. Even though Martin often worked away from SDS's offices without the presence of a direct SDS supervisor, SDS still controlled all aspects of Martin's job activities by enforcing mandatory compliance with SDS's and/or its client's policies and procedures.

45. No real investment was required of Martin to perform her job.

46. SDS determined Martin's opportunity for profit and loss.

47. Martin did not provide the equipment she worked with on a daily basis. SDS made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Martin works.

48. Martin did not incur operating expenses like rent, payroll, marketing, and insurance.

49. Martin was economically dependent on SDS during her employment.

50. SDS set Martin's rate of pay and her work schedule and prohibited her from working other jobs for other companies while working on jobs for SDS.

51. SDS directly determined Martin's opportunity for profit and loss, as Martin's earning opportunity was based on the amount of time SDS scheduled her to work.

52. Very little skill, training, or initiative was required of Martin to perform her job duties.

53. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by SDS and/or its clients.

54. Virtually every job function of the Putative Class Members was pre-determined by SDS and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties.

55. The Putative Class Members were prohibited from varying their job duties outside pre-determined parameters.

56. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

57. For the purposes of an unpaid overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

58. Martin performed routine manual and technical labor duties that were largely dictated by SDS and/or its clients.

59. Martin was not employed by SDS on a project-by-project basis.

60. While Martin was classified as an independent contractor, she was regularly on call by SDS and/or its clients and was expected to drop everything and work whenever needed.

61. All the Putative Class Members performed the same or similar job duties and were subjected to the same or similar policies and procedures by which SDS dictated the day-to-day activities performed by each person. The Putative Class Members also worked similar hours as Martin and were denied overtime pay as a result of the same illegal pay practice.

62. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 10-hour shifts for days or weeks at a time.

63. In addition, Martin and the Putative Class Members often worked call-outs that would add up to 15 additional hours to their typical 70-hour workweeks.

64. Instead of paying them overtime, SDS paid the Putative Class Members a day-rate.

65. SDS denied the Putative Class Members any overtime premium for any hours worked in excess of 40 hours in a single workweek.

66. The Putative Class Members maintained and worked with oilfield machinery, performed manual labor, and worked long hours in the field.

67. Because Martin and the Putative Class Members were misclassified as independent contractors by SDS, they should receive overtime for all hours they worked in excess of 40 hours in each workweek.

68. SDS's policy of failing to pay overtime to its operators, including Martin, violated the FLSA because these workers were, for all purposes, employees performing non-exempt job duties.

69. SDS's day-rate system violated the FLSA because Martin and the Putative Class Members did not receive any overtime premium pay for hours worked over 40 hours each workweek.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

70. Martin incorporates all preceding paragraphs.

71. The illegal pay practices SDS imposed on Martin were likewise imposed on the Putative Class Members.

72. Numerous other individuals who worked with Martin were improperly classified as exempt, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA.

73. Thus, SDS imposed a uniform practice or policy on Martin and the Putative Class Members regardless of any individualized factors.

74. Based on her experiences and tenure with SDS, Martin is aware that SDS's illegal practices were imposed on the Putative Class Members.

75. Putative Class Members were all improperly classified as independent contractors, paid a day rate, and not paid overtime when they worked in excess of 40 hours per week.

76. SDS's failure to pay wages and overtime compensation at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

77. Martin has no interest contrary to, or in conflict with, the Putative Class Members. Like each member of the proposed classes, Martin has an interest in obtaining the unpaid overtime wages owed under federal law.

78. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

79. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and SDS will reap the unjust benefits of violating the FLSA.

80. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### CAUSE OF ACTION—FLSA VIOLATIONS

81. Martin incorporates all preceding paragraphs.

82. As set forth herein, SDS violated the FLSA by failing to pay Martin and the Putative Class Members overtime under its day-rate system for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

83. SDS knowingly, willfully, or with reckless disregard carried out this illegal pattern or practice of failing to pay Martin and the Putative Class Members proper overtime compensation.

84. SDS's failure to pay overtime compensation to Martin and the Putative Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

85. Accordingly, Martin and the Putative Class Members are entitled to overtime wages in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

### RELIEF SOUGHT

86. Wherefore, Martin prays for judgment against SDS as follows:

   (a) For an order certifying this case as a collective action pursuant to 29 U.S.C. §216(b) for the purposes of the FLSA claims;

   (b) For an order finding SDS liable for violations of federal wage law with respect to Martin and all Putative Class Members covered by this case;

(c) For a judgment awarding all unpaid wages and liquidated damages to Martin and all Putative Class Members covered by this case;

(d) For a judgment awarding Martin and all Putative Class Members covered by this case their attorneys' fees, costs, and expenses of this action;

(e) For a judgment awarding Martin and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(f) For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**
Texas Bar # 24069719
**PARMET PC**
PO Box 540907
800 Sawyer St. (77007)
Houston, Texas 77254
phone 713 999 5228
fax 713 999 1187
matt@parmet.law

**Edmond S. Moreland, Jr.**
Texas Bar # 24002644
**MORELAND VERRETT, P.C.**
700 West Summit Dr.
Wimberley, TX 78676
phone 512 782 0567
fax 512 782 0605
edmond@morelandlaw.com

**Attorneys for Plaintiff**